Thank you and good morning. May it please the court, my name is Justin Harrison. It's my privilege to appear before you today on behalf of the appellate, Beckley Oncology Associates. There are two issues pending before the court this morning. One is whether the district court committed reversible error by confirming the underlying arbitration awards and refusing to vacate the arbitration awards in response to a Rule 12b6 motion. The second issue is whether the parties entered into a waiver either in whole or in part regarding judicial review of an arbitration award. The answer to the first question is yes. The answer to the second question is no. Unless the court prefers otherwise, I'll address those issues in turn. This is the rule in the Fourth Circuit. When an arbitration award disregards or a federal court has no choice but to vacate that arbitration award, that's the holding in patent, which remains good law in this circuit. The arbitrator determined that the appellee, Dr. Abumasmah, was entitled to receive a fin of compensation for the third and final year of his employment at BOA. The arbitrator's decision disregards and modifies the plain and unambiguous language in the employment agreement. Direct your attention specifically to Section 5b of the agreement, which is included in our joint appendix at page 24. The sole and absolute discretion to award bonuses to Dr. Abumasmah rested with BOA. There was a limited carve-out for the initial two-year period of his employment, and that carve-out required BOA to pay Dr. Abumasmah incentive compensation for the first and second year of his employment. BOA did that. BOA did not pay him incentive compensation for the third year, and that's what was arbitrated below. Mr. Harrison, sorry, and I should have stopped you earlier, but I know you decided that you wanted to take these in the order that you just said, but it seems to me that the second issue might be dispositive because if we were to find that the waiver in this case was enforceable, either in whole or in part, there'd be no issue to discuss with respect to the merits of the arbitrator's ruling. So can you talk about that first? And I want you to talk about it in the context of my understanding of the relevant law. So I think it logical to say that the FAA contemplates some level of review by a district court because an arbitrator's award, for example, without confirming it simply isn't enforceable. So at a minimum, it seems to me that a district court has a role to play in confirming an award, and perhaps corollary to that, the statute seems to contemplate a role for the district court in vacating or modifying an award. So the statute is clear as to that. So I would grant you that perhaps the waiver might not be enforceable with respect to that aspect of review. But why wouldn't it be enforceable with respect to the review before this court here today? I mean, there's express requirement of appellate review, and I want to analogize this to criminal cases. We enforce appellate waivers of criminal cases all the time. And even in cases where the waivers are too broad, we say, well, we're not going to enforce the waiver that's too broad that might impinge on a defendant's right, for example, to allege ineffective assistance of counsel or prosecutorial misconduct. But we enforce those waivers in criminal cases, and it seems odd that we wouldn't do the same here. So talk to me about that. Why isn't this case simply resolved on the issue of you waived your rights to appellate review? Thank you, Your Honor. The issue is going to turn in part on section 16 of the arbitration agreement. That's where the waiver language between these parties is found. And so the issue before you is this, did the parties away the appellate rights to the arbitration award, or did the parties waive appellate rights to the district court's judgment? And as I'll explain to you, it's our position that the parties waived appellate review of the arbitration award based upon the plain language in section 16. It did not waive appellate review of a decision regarding vacator confirmation. The closest case we have to prove this most is the Mac Tech case from the in our brief, but it was cited by the Ninth Circuit in the Walmart case. And the Tenth Circuit, and this was a decision that predates the Hall Street Associates case, Tenth Circuit held that there's a distinction between a waiver that refers to an arbitration award and a waiver that refers to an actual court judgment. And so let's compare the language of the waiver provision in Mac Tech's Tenth Circuit case. I apologize for reading it to you, but I want to be precise. In that case, judgment upon the award rendered by the arbitrator shall be final and non-appealable and may be entered in any court having jurisdiction thereof. That language contrasts with the waiver provision in section 16 of the employment agreement between the parties in this case. The decision of such arbitrator shall be final and conclusive and enforceable in any court of competent jurisdiction without any right of judicial review or appeal. This distinction is subtle, but it's significant. The Mac Tech case refers to a judgment. The provision in our case is referring to an arbitrator's decision. And according to the courts that have touched upon this issue, in order to have a waiver of judicial review or a waiver of appellate review, the waiver has to be clear and specific. And our argument here is that the waiver of judicial review in this instance, or excuse me, appellate review, is not sufficiently clear and specific to be enforced against the parties. Sorry, Mr. Harrison. So how would appellate review occur in this case but for review of a district court's award? Because we would have no grounds to review an arbitration award directly, right? Right, Your Honor. The language that comes from section 16 of the agreement is a little bit stale. And frankly, it's been reviewed by several courts. And several courts have noted that that language simply refers to a waiver of any direct appellate review of an arbitration award. It does not refer to a waiver of appellate review of a district court's decision regarding... But I guess my question is, in what scenario would an appellate court ever review an appellate award directly? I'm not sure there ever would be, Your Honor, but it might be a situation where the parties were trying to avoid appellate review by the district court of an arbitration award beyond those grounds that are set forth in the FAA or the court for the holdings of this jurisdiction. And so, you know, just to be clear, judicial review is not a review based upon the statutory provisions in the FAA or manifest disregard standard as this court has acknowledged and held in the past. And so the... All right, so just so I understand your argument, it's that this clause might waive appellate review, direct appellate review by a court, even though that seems to be non-existent. But it's not clear enough that intended to waive appellate review of a district court's decision as to whether to affirm, modify, or vacate. That's your position? Yes, Your Honor. Okay. That's consistent with holding from the Tenth Circuit and MACTEC. I believe that's the only circuit to get that far on this issue. I will note that both the Ninth Circuit and the Third Circuit touched upon it. They have declined to reach that issue because those cases were resolved on other grounds. One is the South Coke case out of the Third Circuit. The second one is the Walmart case out of the Ninth Circuit. But to the extent that this court finds the holding in MACTEC to be persuasive and wants to follow it, we fall outside of it. Because here, unlike in MACTEC, we're only talking about appellate waiver of an arbitration award rather than appellate waiver of a judicial decision from a district court. I think that distinction is relevant with the goals and the purpose of the FAA. I'm sure the court is familiar with the holding, but Justice Souter noted in Hall Street Associates that the provisions of the FAA were unique. Federal courts are required to confirm an arbitration award unless the award is vacated, modified, or corrected as provided in Section 10 of the FAA. And because of this, parties are not for arbitration awards and any provision that interferes with that process is unenforceable. I think that language applies to general waivers of judicial review. I think that language provides some color as to how the court should proceed in evaluating any appellate judicial review. Okay, so let me ask you about Patton because you the distinction in Patton that the arbitrator in that case attempted to incorporate language from an entirely different agreement into the one that he or she, I don't know if it was he or she, was considering. And doesn't that make a difference here? Because the arbitrator in this case is fixed solely on the agreement before him. And as you know, I mean, our cases are pretty clear that the only thing an arbitrator needs to do is do his or her job, whether he or she does it well or commits an error of law, that by itself isn't enough. So why is Patton at all relevant in this context? I think Patton controls, Your Honor. Correct. The arbitrator's mistake, the arbitrator's disregard of the law in Patton came down to this. He was required to evaluate the choice of law provision in the agreement, which referred to Massachusetts law. Massachusetts law provided for a longer time limitations period. The arbitrator didn't look to Massachusetts law. Instead, he borrowed a time limitations period from an agreement that was no longer effective. And by doing that, he went beyond the four corners of the contract. He ignored the plain, non-ambiguous language of the contract. And by doing that, he modified it, right? That's exactly what happened here. He disregarded the plain terms because he ignored West Virginia law. And West Virginia law, in this instance, provides that he cannot have an equitable remedy of unjust enrichment in the face of a valid contract that covers the same subject. We have that here. Section 5B delineates the party's rights and obligations with respect to the provision regarding the incentive compensation for the third year. During the third year of BOA, the arbitrator ignored that. The arbitrator ignored that by going out and doing his own research to find out what fair market value was to pay Dr. Abou-Mazmoum. By doing that, we were running afoul of the holding in Patton in terms of manifest disregard. By doing that, I'm going to draw a test of freement because the arbitrators worried about how fairly Dr. Abou-Mazmoum was being treated. The contract didn't require fair market value. The contract didn't require that he be paid fairly. The contract specifically stated, here's your base compensation, 275. During the first two years of employment, here's your incentive compensation fees. Beyond the first two years, the sole and absolute discretion for award bonuses rests with BOA. So when I look at it that way, Your Honor, I think Patton's directly on point. And I know we're supposed to be deferential arbitrators. I know the scope of review for reviewing an arbitration award is deferential. But I would submit to you that this is the rare case where you have an arbitrator that went rogue, went outside the contract, tried to figure out a remedy that no party saw. Keep in mind that Dr. Abou-Mazmoum- Well, I thought the district court in this case, Mr. Harrison, I thought the district court in this case concluded that the employment agreement that the arbitrator had found that the employment agreement provided for a bonus, but it didn't provide for the mechanism for calculating that bonus. And therefore, again, I forget if it was he or she devised a method as a matter of equity to arrive at that amount. And the court said that, in fact, the arbitrator had equitable powers to do so. So I guess you disagree with that first premise. But doesn't the agreement suggest, I mean, it does say employer has a sole and absolute discretion to award bonuses, but then it sets out a mechanism for bonuses during the first two years. And then at the very end of that clause, it says that future bonuses will be subject to renegotiation between the parties. That seems to contemplate that there was supposed to be a bonus of some kind, but that the formula was just never arrived at by the parties. Did you catch the tail end of the question? Your Honor, at the beginning of the question, you asked me about Judge Berger's decision. Right. And then after that, I talked about the language of the agreement itself, which as you accurately pointed out, that it begins with a statement that whether or not to award a bonus lies in the sole and absolute discretion of the employer. But then it sets out the bonus structure for the first two years. And then the last sentence says that, I don't have it in front of me right now, but that future bonuses will be subject to renegotiation between the parties. And so the district court seemed to think that based on that language, that there was clear agreement among the parties that there was going to be an amount of a bonus beyond the first two years, but the mechanism for calculating it hadn't been established. And so the arbitrator was within his rights to do that. Now, that may be wrong, but how is that a manifest disregard of the law? Your Honor, you're correct about the district court's analysis, and it's illustrated in footnote two of the opinion, but it's also speculation. And the district court, frankly, is speculating as to whether the arbitrator determined that that provision would be ambiguous. My position is this, regardless of whether that speculation is correct, and regardless of whether the arbitrator determined that provision to be ambiguous, it's not. And the clear and unambiguous, that's not an obligation to award a bonus. That's an agreement to agree at a future date. In fact, it's not even an agreement to agree. We've cited cases from around the country in our briefing. That is permissive language. It does not obligate a party to do anything. No, but it does indicate some intent of the parties going forward after the first two-year period to negotiate something. And you do have one side. The doctor did perform, didn't he, in third year? Yes, sir. He worked the third year, and he was paid his base compensation as the contract required. But he was... I'm sorry, go ahead. Did anything in this contract would suggest that your client would have allowed him to work without generating what would be a bonus amount without negotiating in good faith some compensation? Your Honor, I would refer you to Section 23 of the agreement, which simply requires the parties, if you're going to modify the agreement, it has to be in writing and signed by the parties. That never happened. But doesn't the contract talk about equitable remedies are available for the arbitrator to consider? Consistent, yes, Your Honor. Consistent with West Virginia law. But wouldn't that be consistent with, for example, quantum merit? No, Your Honor. If we have a under West Virginia law, you do not get an equitable remedy regarding restitution or unjust enrichment. And in fact, our Supreme Court recently reaffirmed this. But you didn't have a contract. You didn't have a contract in place other than Orland that you would in good faith negotiate if he worked for you the third year. Your Honor, there was no requirement... Excuse me, am I wrong about that? I think so, Your Honor, because the contract doesn't require negotiations. I didn't say require. It says you express your intent. Your client had an intent to, in good faith, negotiate a bonus structure if he worked in the third year. Is that correct? I disagree, Your Honor. Which part is this? In good faith, they didn't intend to do that? I don't think the contract requires that, Your Honor. I didn't say that. I'm not asking that. I'm asking about your client. Are you saying they represent that your client had no intent to, in good faith, negotiate if he worked in the third year? Your Honor, here, let me answer it this way. I'm not trying to duck your question. Well, you're doing a good job of it. Well, the contract was set up at a two-year mark because that's when Dr. Abu Maslow became eligible for partnership. Now, he chose... That opportunity was afforded to him, and he backed off because he realized he was going to get paid less than had he stayed an employee under the original structure of his contract. Okay, so that was the intent. This is a doctor coming in. It's a recruitment tool. It's negotiated at arm's length. He comes in, does two years. At the end of two years, he makes partner. Well, he decided he didn't want to make partner, and so he's operating under the third term of the agreement. The third term, the third-year term, excuse me, does not require payment of incentive compensation bonuses. It doesn't even require negotiation. It's omitting a significant word, which is shall. And I've seen executive employment contracts and their court decisions, which talk about parties' obligations to engage in negotiations if the word shall is in there. But we don't have shall. We have subject to, which is permissive language. It does not require negotiation. It does not require an agreement. And so our position... So, Mr. Harrison, can I ask... Okay, so that's a reasonable interpretation. I get that. But what if the arbitrator interpreted that subject to renegotiation as shall? That may be an error of law, but how is it a manifest disregard of the law? Your Honor, because it ignores the plain language of the contract. And I realize that we're talking about... No, I think the arbitrator is trying to interpret the contract, and you have a view of the contract. He came up with a different view of the contract. Yours may be the better view, and his may be wrong, but how is it manifestly wrong? That's a pretty high bar. I think it's manifestly wrong to the same extent that the arbitrator got it wrong in patent, Your Honor. It's your client who probably asked for arbitration, didn't he? No, sir. It's not? The arbitration agreement wasn't generated by your client? I'm sorry, Your Honor. I thought you were referring to the demand for arbitration. The arbitration... No, no, no. I'm talking about the demand. It wasn't an arbitration clause. Your Honor, we don't have well-developed evidence on what the parties wanted with respect to the arbitration clause. I can tell you, the record's not before the court, but I can tell you that the agreement was borrowed from an older template that was prepared 20 plus years ago. I've seen very few that wasn't generated by the employer. I have no reason to believe that Dr. Abu Mazma requested the arbitration provision. Okay. So, I understand, Judge Diaz, your concern about where we draw the line on vacator. I think what happened here fits squarely within patent. You've got an arbitrator ignoring the plain language of the agreement. At some point, there has to be a judgment call made by a court, the district court, this panel, as to whether the arbitrator did that. We submit, based upon the plain language of the agreement, he did that. I see that I am over my time, and I will reserve any additional comments for rebuttal. Thank you so much, Mr. Harris. Mr. Amar? Thank you, Your Honors. May it please the court. My name's Omar Amar. I represent Dr. Abu Mazma. And as an initial matter, to touch on Judge Diaz's point, I agree, Your Honor. I believe that the issue of the non-appealability provision is dispositive in this matter. And all of the case law set forth by BOA in support of that not being applicable here was limited to a district court's ability to confirm or vacate award consistent with the FAA. It doesn't stand to reason that a party would draft a non-appealability provision, excuse me, not to enforce it. This was clearly limited, and we'll grant that. The district court has to retain some level of review in order to determine whether or not the award complied with the FAA. But beyond that, there was clearly an intention by the parties to preserve whatever the arbitrator ruled upon and whatever the district court either that couldn't be enforced. So in that respect, I don't agree that the non-appealability provision is not applicable in this case. And I also want to touch upon this court's holding in McKinsey as it's followed in every other court in interpreting contract terms. Ambiguity in a contract goes against the drafter. So if it's the BOA's position that it wasn't clearly lined out whether or not arbitration or, excuse me, appeal prohibition applied to the district court's confirmation or vacater or any review beyond that, I would argue that it goes against BOA in that sense and that any appeal beyond what was necessary to confirm or vacate the award should be foreclosed in that sense. Also, Your Honors, to touch upon, even if we do want to get to the issue of whether or not there was a manifest disregard of the law in this case, I would argue that there wasn't. As the arbitrator pointed out and Judge Berger confirmed, Section 5B does set forth that there is sole and absolute discretion by BOA to declare and award bonuses, but as Judge Diaz pointed on at the end of the section, it indicates that the terms, the subject terms, are only applicable for the first two years, the official term of the agreement, and are subject to that this bonus would survive the initial term, subject to the terms of the agreement. Once BOA put pen to paper in declaring the bonus in the agreement, they were required to abide by pending that bonus, etc. There was no written modification removing the bonus as required by Section 23, and at the end of the second year, the initial term of the agreement, the automatic renewal provision automatically extended all the terms. Mr. Mauck, can I ask, so if this case had not been arbitrated and instead litigated in court, what's the rule of law that you say that would result in a verdict for your client? I mean, this seems to me like what you've got here is an agreement to agree without the essential terms of how to go about achieving, arriving at what the precise amount of the bonus would have been in the third year. Do you think that you would have prevailed in a court of law on this claim, or is this just too indefinite to be enforceable? I believe we would have, Judge. I believe that you kind of touched on this a little bit. The renewal provision maintains the agreement as it stands, absent a written modification. So, by the parties carving out an exception in Section 5B, by placing the term subject to renegotiation, there was clearly an intent by both of them to allow this bonus to survive the initial term. That language was included there in the event that Dr. Abbas-Moskva didn't work past the initial terms of the agreement. Well, I believe the jury would look at the intent of the parties in that you were trying to establish these terms as they see them on day one of employment, that there is an opportunity for Dr. Abbas-Moskva to earn bonus compensation beyond the initial term, but there's no requirement that the parties renegotiate the terms of the contract. Again, as you can see from Dr. Abbas-Moskva's production in his third year, he was clearly operating on the understanding that there was bonus compensation, that there was no written modification, either removing the bonus provision or modifying the arbitrator in this case. And I understand what part of the reason why he did this. Apparently, he didn't get much help from the parties as he came up with a formula, which he, I guess, equated to some sort of rough justice in terms of what a bonus should be. But do you think that would have won the day in a court of law that a jury could have just had a thin air come up with a bonus amount and said, that's what your client is entitled to? Well, with all due respect, Your Honor, I don't believe arbitrator Snyder necessarily pulled this remedy out of thin air. He equated it to the mechanism the parties used in the initial term, which was a percentage of bonus received. And using that, the spirit of that formula, the whole intent behind it was to provide Dr. Abbas-Moskva with a percentage of those collections. He awarded a half of 5% of the formula to those collections that yielded a 52% margin. That is in keeping with all collections, Dr. Abbas-Moskva raised a higher percentage of the collections. I'm having trouble hearing you. Can you get a little closer to your mic? My apologies, Judge. Is that better? That's better. As I was saying, Judge, I believe a jury could, based on the evidence in this case, infer the party's intention that in a bonus clause that indicates it's subject to negotiation in further incantations of this agreement, there was intent to either preserve the nature of giving Dr. Abbas-Moskva a percentage of gross collections or following some other mechanism if the parties provided a written modification thereto setting forth that mechanism. So the fact that the arbitrator awarded a one, if I believe I'm reciting his wording correctly, one half of the 5% above the 95% that constituted the chemotherapy drugs, then that is in keeping with what the parties intended. The more collections, the more bonus. Well, Dr. Abbas-Moskva, he reached a certain point here where he was entitled to bonus compensation, but as arbitrator Snyder pointed out and Judge Berger affirmed, the agreement erroneously leaves out a procedure for the parties to reach that agreement. That, by definition, is ambiguity. It was subject to two different interpretations, one by BOA, which they set forth, and one by Dr. Abbas-Moskva, which was clearly set forth in his conduct during the third year. And I'd also like to point out here, Judge, at no point during the third year when Dr. Abbas-Moskva inquired as to when he'd be paid his third year bonus, did BOA outright inform him there was no bonus. If you recall from our brief, there was a shareholder meeting the month before Dr. Abbas-Moskva left the practice in which he posed that question to the shareholders. And their response to him was, these agreements will be rewritten based on the restructuring of the corporation, and that we are going to most likely utilize what's called a WRVU methodology, which is basically, and I'm straying from the point here, Judge, it's a unit-based measure of production to tool compensation. My point is, during the third year, there was nothing by the terms of the agreement that BOA did that would foreclose a bonus provision to Dr. Abbas-Moskva. That's why he worked to increase his collections more than any other shareholder there. And Arbitrator Snyder correctly viewed that fact, that the ambiguity in Section 5 is construed against BOA, and in the comment of the parties, clearly evidence is an intent to give Dr. Abbas-Moskva bonus compensation beyond the initial term. The only problem is there was no mechanism to decide it. And again, that ambiguity must go against BOA. And Your Honor, I believe I've answered your question sufficiently. If I haven't, let me know. But I'd like to touch upon, even if this court doesn't find that issue, the issue of the non-appealability dispositive, I would like to touch on the matter than the manifest disregard of law claim as BOA has raised it. Again, Your Honor, as Judge Diaz pointed out, this was not a manifest disregard of the law. And I'd like to remind this court of its role in assessing an arbitration award. As Judge King pointed out in Dataquick Infosystems' opinion, the scope of judicial review for an arbitrator's decision is among the narrowest known at law. And I'm paraphrasing here, because I don't want to read the whole court. Whether the arbitrators did the job they were told to do, not whether they did it well, or correctly, or reasonably, or simply whether they did it. And I believe Judge Gregory, it was you that pointed out in Section 16, the agreement gives the arbitrator the right to apply the right and duty to apply legal relief. In this instance, he was not dealing with unambiguous contract terms where he could just simply try to, you know, advance the will of the parties. These were ambiguous terms that not only conflicted with the language within Section 5b, but they also conflicted with the requirement that any change to the terms be subject to arriving signed by the parties. It conflicted with the automatic renewal provision that preserves all of the terms as they are after the initial term is complete. And in the face of that ambiguity, arbitrator Snyder applied an equitable remedy based on the conduct of the parties. Nobody stopped Dr. Abomasma from out-earning the shareholders in year three, because they knew if they did, that he would lose all incentive to increase his collections. And in that sense, that is not dealing in good faith with Dr. Abomasma. I think you paraphrased sort of the very differential standard that we apply in this case. But I think you would agree that an arbitrator can do a job so badly and so irrationally that a court would have to step in, I guess. But your point is that this is not that case, that given the ambiguity and the agreements that the arbitrator did his level best to come to a result that equated with the intent of the parties. And even if he was wrong on that point, we can't say as a matter of law that he manifestly disregarded the law. Is that right? I think that you said it better than I even could, Judge DeGioia. Yes, this is not, as I said, a standard that is one of the narrowest known at law requires a departure from the law so egregious that it's plain on its face. The fact that the arbitrator was trying to incorporate a bonus provision that was poorly written is not a standard. As you pointed out, in patent, borrowing provisions from other agreements or making up his own provision, he applied a methodology that these parties agreed to for the initial term of the agreement, which was a percentage of collections that he had borrowed from Dr. Abbamasma for his award. And I'd like to point out his award was less than half of what Dr. Abbamasma would have received had we applied the calculation method from the initial term of the agreement. In that respect, it's hard to argue that he reached a decision that was manifestly unfair. You're breaking up a little bit for me now. Get closer to the mic or something. My apologies, Judge King. In that respect, it can't be argued that that was a manifest departure from the law. It is. The law in every case, the law in every case that BOA set forth, and we put this in the agreement, requires the arbitrator to interpret the party's intentions We made it. It's not plain and unambiguous language. And in fact, in Judge Berger's decision, granting our motion to dismiss the complaint and vacate the award, she dispensed with that in two sentences. She said that BOA misstated arbitrator Snyder's ruling. This was not plain and unambiguous language. A bonus provision that sets forth the mechanism for calculating it the first two years, indicates those terms are subject to renegotiation in subsequent terms, and then provides no mechanism for the parties to reach that mechanism is ambiguous, and in this case must be construed against BOA's interests. I fail to see how that's a manifest disregard of the law, and in every case that was cited by BOA, it dealt with conduct that is not present in this case. Borrowing provisions from other agreements, arbitrators who are either biased or in favor of that, that was not present here, Your Honor. And it's just, quite frankly, this is BOA trying to change the rules of the game after it's over because they lost. That's all it is. It's how can you argue a non-appealability provision that upholds the purpose of submitting this dispute to binding and compulsory arbitration is not enforceable. That's a laughable argument, Your Honor. Beyond what the district court has to do to ensure that an award complies with FAA and either vacate or confirm, that provision holds steady. That's the whole point of this, is to avoid, with all due respect, I enjoy being here in front of you all today, but that provision and the point of arbitration is to avoid situations like this. If Dr. Abbasma knew that that provision was meaningless, he would have simply submitted this in state court and let a jury sort it out. That would have been more advantageous to him than submitting to binding arbitration. It's an after-the-fact denial of Dr. Abbasma's right to access the courts for this dispute. And that was not a provision he drafted. That was BOA's provision. Your Honor, I just, I fail to see how there's any manifest disregard for law in this sense. And to touch on another common law ground under which awards may be vacated, this award also drew its essence from the agreement. If I may cite the court's holding, and make sure I'm getting the case name here correct, my apologies. In the Richmond newspaper case that was authored by Judge Traxler, an arbitration award does not fail to draw its essence from the contract where it provides a plausible reading of the agreement. A plausible reading of the agreement, as it was drafted, was to incentivize Dr. Abbasma to increase the collections of BOA, and he did that outstandingly. The reason, and to touch on what BOA pointed out, that the arbitrator was concerned with a fairness to Dr. Abbasma, he brought up Dr. Abbasma's collections to point out the fact that he was holding up his end of the bargain, that he was increasing collections to BOA in his third year because there was no conduct, no written modification, removing the bonus provision, altering its terms, it automatically triggered the automatic renewal, preserved the bonus term as it was. And so, the essence of this agreement was to reward Dr. Abbasma for increased collections of the practice. I fail to see how an award that applies a similar methodology by taking a percentage of those collections, even a percentage that was lower than what Dr. Abbasma should have received if we just extend the initial calculation method, how that does not draw its essence from the agreement. Your Honor, I believe that the only option, I see that I have three minutes left. I believe that we've touched on every point that's relevant here. The non-appealability provision is dispositive in this case, Your Honor. You cannot allow BOA with the provision that it drafted to come before the court and tell you that they never intended to enforce that provision. That's unconscionable. That was never the party's intention. Dr. Abbasma signed away his right to access the courts. And you shouldn't allow BOA to submit that agreement now because they're not happy with the outcome. We ask respectfully, Your Honors, please, we ask that you please affirm this award in keeping with this circuit court's very, very high standard for overturning these awards. None of those factors that are required to do so are present in this case. And I'll be happy to take any questions you have with the remaining time I have left. All right. Thank you, Mr. Ahmad. Mr. Harrison, you have some time reserved. Thank you, Your Honor. Briefly, I would like to revisit the non-appealability issue, just a couple of points. Dr. Abbasma has not cited any authority that allowed for waiver of appellate review given the language that the party used in Section 16 of the Employment Agreement. And just to reiterate that point coming from the Tenth Circuit, we believe that language is not enforceable to waive appellate review of a district court's decision regarding vacator confirmation. I want to return to the merits of vacator. First of all, this issue of ambiguity is kind of interesting. Ambiguity is a question of law. And prior to receiving the awards in this case, it was the appellee's position throughout the entire arbitration proceeding that the plain unambiguous language of the contract provided him with incentive compensation based upon the same methodology that was used during the initial term of employment. It wasn't until the arbitrator issued his award that the appellee adopted the position that the subject to language is plain and is ambiguous and should be construed against BOA. But let me address that for a second. At page 24 of our opening brief, we cite a litany of cases specifically addressing that subject to language and how it's permissive rather than mandatory. The appellee has not cited any language from any court that disputes the authority that we have provided you. We do not believe a plausible reading of that agreement is ambiguous or requires BOA to engage in renegotiations and provide Dr. Abu Mazma an incentive bonus for the third year of his employment. During my opening remarks, I did not get the opportunity to touch upon the other two grounds for vacator. I would like to briefly touch upon those now if I may. There are two additional grounds for vacator that we have asserted. And admittedly, there is some overlap factually with how they're supported. The second common law ground that's been recognized by this circuit is whether the awards fail to draw their essence from the agreement. We obviously believe they don't. And as this court held in patent in terms of that concept, the federal court must vacate an arbitration award if the award is based upon the arbitrator's personal notions of right and wrong. The language in the awards clearly indicates that the arbitrator was concerned that Dr. Abu Mazma was underpaid. He referred to the doctor's astonishing efforts. That's a quote. His extraordinary revenue. That's a quote. It's clear that he thought it was unfair to limit him to his base salary, $275,000. And in support of that, he even conducted his own research. He went out and pulled market surveys to find out what oncologists make somewhere around here somewhere. He didn't really specify where. But he did note that he thought his award was, quote, unquote, fair or reasonable value for, quote, unquote, a hardworking oncologist. And so when you take that language from the arbitration awards, it's pretty clear that the arbitrator was substituting his notions, his personal notions of right and wrong. We think vacater is warranted based upon that because those agreements based upon his own personal notions, based upon the arbitrator's personal notions, that'll draw their essence from the agreement. The third ground for vacater that we asserted at the district court level was Section 10A4 under the FAA. That rule provides that an arbitrator exceeds his powers under Section 10 when he reforms the material terms of the contract so that the agreement conforms to his own sense of equity and justice. I think that concept is fairly similar to the failure to draw essence from the agreement type of analysis. But we have cited some case law in our briefing, which we believe supports vacater at context as well. Specifically, I'd like to refer the court to the PMA capital case. Uh, factually, that's a unique case. It was a three-panel arbitration, three-panel, three-arbitrate, excuse me, three-arbitrator panel trying to resolve an insurance dispute, arbitration provision, and then something called an honorable engagement clause, which is pretty unique. And that affords the arbitrator's extraordinary discretion to fashion a remedy to accomplish the party's goal. The arbitration panel in that case eliminated a provision of the contract. When appealed to the Third Circuit, excuse me, the Third Circuit appealed the district court's vacater of that award under Section 10A4 because the arbitrators were not empowered to do that. We have that here. Let me ask you a question. Yes, sir. I understand you're arguing, but the question is, why did you put in a term saying that the uh, consideration can consider equitable standards or doctrines or whatever you might call this? Because it seemed to be now you're arguing in contrary, because if you're right, then you're wrong to put equitable in, correct? Doesn't that make it ambiguous? Because you're saying it either is agreement or it is not. Here, it was not. You can't go any further. So, what would be the need to have the duty to have equitable remedies if that's how it should be interpreted as a whole? Can you explain that? Yes, your honor. If you look at the arbitration agreement in the party's contract, it's extraordinarily broad. It covers a whole host of possible situations or issues that may develop. It's much broader than any dispute that could exist simply based upon the contract itself. And so, I didn't draft the agreement. I wasn't involved in negotiating it. But I can tell you that it's all encompassing. But the agreement belongs to your client, right? I mean, you wrote it up. Your client did. It belongs to both parties, your honor. Correct. But my point would be this, your honor. Even if the agreement allows for the arbitrator to rule upon a claim for equitable relief, it still has to be consistent with West Virginia law. That didn't happen here. The claim for equitable relief still has to be appropriate under the facts and circumstances of the claim. We have a contract. The contract specifies the doctor's compensation. It's quite clear as to what the doctor's compensation is supposed to be. So, going back and tinkering with the doctor's compensation through an equitable remedy would not be appropriate. Well, that's if the contract clearly said there's a clear intent not to give him any more than his base salary. That's not the case. You said, and you're right, you don't know the terms of it, but you open the door in the very document. After the second year, this is this, meaning the bonus structure is subject to negotiation. There's no indication that this was the end and that you wouldn't do that. Just like you just said, it is no way to clearly cover everything. That was your answer to why you said equitable type terms can be used. Isn't this one of them? There's no way to figure what to do when, for example, your client decided not to, you open this up. You said that he decided not to be a partner, right? Right. And then you, this is your word. I heard very carefully. You said, well, this was just a tool that will be used from partner. Then after that's sort of the great divide, then we determine what's on the other side of that. Did you say that? I didn't use those words, but that's the gist of it. Correct. It's the gist of it, right? So then in that, when you look at the whole context, because you wanted the arbitrator to do it, no offense, you didn't want judges to do it. You wanted an arbitrator to do it. Now you want to come to the district court judge. Now you want to come to us too. But isn't that the kind of thing that comes up when you put in is subject to, you didn't, when he said he didn't want to be a partner, did you say base salary only? Your Honor, there were just, there's record evidence in the case. I don't know if it's before the court in the JA, but Dr. Abu Mazma was told at the beginning of the third year, the bonus terms would be changing. Right, but that's the same thing as renegotiation. That's not saying you will not get a bonus. I don't think the contract requires that, we're kind of getting into this promissory estoppel analysis that I don't think is applicable. We have a contract that's on point. I'll break to this judge. If you think that subject two language is ambiguous, then I lose, right? I'm acknowledging that. I don't think that subject two language is ambiguous and I just don't. And you think if we ruled that it is, we are wrong, right? I do. Just like you do for the arbitrator. You think it's wrong, right? Yes, Your Honor. I have strong opinions and that's not the standard for overcoming the arbitrations award. I think he's more than wrong, Your Honor. I think he's exhibited manifest disregard. If I might, just recently, Your Honor, back in 2012, I think this is reiterated. This is the standard, the two part standard for manifest disregard in this circuit. You have to have an applicable legal principle that's clearly defined and not subject to reasonable debate. The arbitrator refused to use that principle. I do not believe that subject to language is subject to reasonable debate, even though the parties may not agree to it because ambiguity is a question of law. It's not a question for the parties to agree or disagree about. And based upon the case law we've cited to the court, subject to is simply not ambiguous. I realize you may disagree at the end of the day, Your Honor, but I just want to make sure my point was clear. I just want to make sure it's not a factual question, it's a question of law, right? Yes, Your Honor. And who did you decide to give that right to do, make those decisions of law? That was the arbitrator. Okay. I see that my time is over, if any... Judge King, did you have a question? No, I'm fine. All right. Thank you so much, Mr. Harrison. And thank you both for your argument here today and hope that you'll be safe and stay well. Thank you so much. Thank you, Your Honor. Thank you, Your Honors. Have a good day. Thank you. Same to you.
judges: Roger L. Gregory, Robert B. King, Albert Diaz